IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARY WIGGINS, # 279826,           )
                                  )
            Petitioner,           )
                                  )
      v.                          )      Civil Action No. 2:16cv883-MHT
                                  )               [WO]
DEIDRA WRIGHT, *et al.,*          )
                                  )
            Respondents.          )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This case is before the court on a petition for writ of habeas corpus under 28 U.S.C.

§ 2254 filed by Alabama inmate Mary Wiggins ("Wiggins") on November 9, 2016.  Doc.

1.[1]

## I.   BACKGROUND

In July 2009, a Conecuh County grand jury indicted Wiggins for capital murder, in

violation of § 13A-5-40(a)(7), Ala. Code 1975 ("[m]urder done for a pecuniary or other

valuable consideration or pursuant to a contract or for hire"), for Wiggins's part in the

murder of her husband, Rudy, who was shot and killed by her son, Joe Ruffin.  Wiggins's

case went to trial in August 2011.  The Alabama Court of Criminal summarized the

evidence adduced:

---

[1] References to "Doc(s)." are to the document numbers of the pleadings, motions, and other materials in the
court file, as compiled and designated on the docket sheet by the Clerk of Court.  Pinpoint citations are to
the page of the electronically filed document in the court's CM/ECF filing system, which may not
correspond to pagination on the "hard copy" of the document presented for filing.

[T]he State through testimony and other evidence established that [Joe] Ruffin offered both [Josh] Griffin and [Chris] Mobley $2,500 to ride with him in a rental car from Ozark to Evergreen.[2]  During the trip, Ruffin telephoned his mother, Wiggins, several times to update her on their location and what time they would arrive in Evergreen.  When Ruffin, Griffin, and Mobley arrived in Evergreen they drove to Jerusalem Church Road—a one-way, dead-end street—and parked their rental car behind a church.  Ruffin then telephoned Wiggins and told her to "send him out."  Wiggins asked Rudy to go outside and retrieve a bag out of her SUV.  When Rudy walked outside, Ruffin approached him and fired several shots hitting Rudy three times—in his neck, his chest, and his arm.  Ruffin, Griffin, and Mobley left Evergreen and drove to Montgomery.  While driving to Montgomery, Griffin threw Ruffin's clothes in a trash can and Ruffin threw the gun out of the passenger-side window of the rental car.  After the three arrived in Montgomery they drove back to Ozark.  The evidence further established that Rudy had an accidental life insurance policy of $750 plus additional coverage of $125,000, of which Wiggins was the beneficiary.  Because the policy covered only accidental death, Wiggins could not recover under the policy if Rudy, who was 74 years old and in poor health at the time of the shooting, died of natural causes.[3]  Even though Wiggins was not present when Ruffin shot Rudy, there was ample circumstantial evidence to show that she intended to assist in the commission of the offense when she sent Rudy out of the mobile home under the guise of getting a bag out of her SUV after Ruffin told her to "send him out."[4]

Doc. 7-1 at 16.

On August 16, 2011, the jury found Wiggins guilty of the capital-murder charge in the indictment.  On October 6, 2011, the trial court sentenced Wiggins to life imprisonment without the possibility of parole.

---

[2] Griffin and Mobley testified against Wiggins at trial.

[3] The prosecution's theory of the case was that Wiggins had Rudy killed for purposes of obtaining the life insurance proceeds.

[4] Wiggins was tried separately from Ruffin, who later pleaded guilty to manslaughter and was sentenced to 27 years in prison.

Wiggins appealed, arguing that (1) the main evidence connecting her to the murder was inadmissible hearsay testimony; (2) the involvement of a police detective who was fired shortly after her trial improperly influenced her case; and (3) the State's evidence was insufficient to support her capital-murder conviction.

On May 11, 2012, the Alabama Court of Criminal Appeals affirmed Wiggins's conviction and sentence by memorandum opinion.  Doc. 7-1   Wiggins applied for rehearing, which was overruled.  On August 10, 2012, the Alabama Supreme Court denied Wiggins's petition for writ of certiorari.  Doc. 7-2.

On August 9, 2013, Wiggins, through retained counsel, filed a petition in the trial court seeking relief under Rule 32 of the Alabama Rules of Criminal Procedure.  Doc. 7-3 at 6–10.  In her Rule 32 petition, Wiggins presented claims that (1) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose exculpatory evidence to the defense, specifically, a memo written by ABI investigator Simon Benson in which Benson noted that Ruffin told him after his arrest that his reasons for killing Rudy went "deeper than insurance" and that he had "been trying to get Rudy for a long time because of something that happened when he was a child"; and (2) Wiggins's trial counsel was ineffective for failing to seek the suppression of certain statements attributed to Wiggins by law enforcement officers.

The trial court held an evidentiary hearing on Wiggins's Rule 32 petition on November 19, 2014.  Doc. 7-3 at 45–125.  The court heard testimony from Joseph Sawyer, Wiggins's trial counsel, and Kenneth Ausby, an investigator with the Conecuh County District Attorney's Office.  In a written order including findings of fact and conclusions of

law, the trial court denied Wiggins's Rule 32 petition on April 21, 2015.  Doc. 7-3 at 31–33.

Wiggins appealed, pursuing the claims she raised in her Rule 32 petition and asserting two new claims of ineffective assistance by her trial counsel.  On February 2, 2016, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the trial court's judgment.  Doc. 7-4.  In its memorandum opinion, the Alabama Court of Criminal Appeals upheld the trial court's merits rulings denying Wiggins's *Brady* claim and her claim that her counsel was ineffective for failing to seek the suppression of her statements to law enforcement.  Doc. 7-4 at 8–9.  The Alabama Court of Criminal Appeals further held that Wiggins's two new claims of ineffective assistance of counsel were not subject to appellate review because Wiggins raised them for the first time in her brief on appeal.  Doc. 7-4 at 8.  Wiggins applied for rehearing, which was overruled.  On August 12, 2016, the Alabama Supreme Court denied Wiggins's petition for writ of certiorari.  Doc. 7-5.

On November 9, 2016, Wiggins, represented by counsel, initiated this habeas action by filing a § 2254 petition reasserting the *Brady* claim in her Rule 32 petition.  *See* Docs. 1 & 2.  Wiggins maintains that the factual conclusions reached by the state courts in denying her *Brady* claim were "patently unreasonable."  Doc. 2 at 20.  The Respondents argue that the state courts correctly denied this claim.  Doc. 7.  For the reasons that follow, the Magistrate Judge finds that Wiggins's § 2254 petition should be denied without an evidentiary hearing.

## II.  DISCUSSION

A.     **AEDPA Standard of Review**

For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A state-court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application" standard, this court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams v. Taylor*, 529 U.S. 362, 411–13 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II). The applicable court is the United States Supreme Court, not lower courts. *Renico v. Lett,* 559 U.S. 766, 779 (2010). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing

federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter,* 562 U.S. 86, 102 (2011). The Supreme Court recently reemphasized this deferential standard, holding that "[t]he state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

As for the unreasonable-determination-of-facts prong under § 2254(d)(2), the federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain,* 135 S.Ct. 2269, 2277 (2015) (citation omitted). "If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id*. (quotation marks and citations omitted). Factual issues made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has

recognized there is a question about the relationship between § 2254(d)(2)'s "unreasonable determination of the facts" standard and § 2254(e)(1)'s presumption, but it has "not yet defined the precise relationship between [them.]" *Brumfield*, 135 S. Ct. at 2282 (quotation marks and citation omitted).  If a petitioner failed to develop the factual basis of a claim in state court, the federal court cannot hold an evidentiary hearing unless the petitioner shows "the claim relies on . . . a new rule of constitutional law, made retroactive . . . ; or . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and . . . the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2).

## B.    Wiggins's *Brady* Claim

As she did in her Rule 32 petition, Wiggins claims that the State violated *Brady v. Maryland* by failing to disclose a memo written by ABI investigator Simon Benson in which Benson noted that Joe Ruffin (Wiggins's son and the actual shooter) told him after his arrest that his reasons for killing Rudy (Wiggins's husband) went "deeper than insurance" and that he had "been trying to get Rudy for a long time because of something that happened when he was a child."  According to Wiggins, Ruffin's statement was "clearly material and exculpatory" to Wiggins, because it indicated Ruffin killed Rudy "with other motivations and not [with] insurance in mind," as the State argued.[5]  *See* Doc. 2 at 23.  Had the jury been presented with Ruffin's statement, Wiggins argues, "it is more

---

[5] As noted above, the State's theory of the case was that Wiggins had Rudy killed, by Ruffin, for purposes of obtaining the proceeds from a life insurance policy on Rudy.

likely than not that the jury would have outright acquitted Ms. Wiggins for capital murder, or would have convicted Ms. Wiggins of some non-capital offense as it would not have believed that the insurance issued was a motivation."  Doc. 2 at 23.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the State must disclose to the defense any material exculpatory evidence in the State's possession.  A new trial is warranted when there is a reasonable probability that disclosure of undisclosed evidence would have altered the outcome of the case.  *United States v. Bagley*, 473 U.S. 667 (1985).  Exculpatory *Brady* information relates to "evidence which directly tends to lessen a defendant's guilt, e.g., a statement from another person which tends to relieve the defendant of responsibility for the crime."  *United States v. Hopkins*, 2008 WL 4453583, at *2 (E.D. Cal. 2008). To establish a *Brady* violation, a defendant must prove: "(1) that the [G]overnment possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense."  *Spivey v. Head*, 207 F.3d 1263, 1283 (11th Cir.2000) (citations omitted).  Of course, where the State has disclosed allegedly exculpatory evidence to the defense, the evidence has not been suppressed and there is no *Brady v*iolation.

At the evidentiary hearing on Wiggins's Rule 32 petition, Joseph Sawyer, Wiggins's trial counsel, and Kenneth Ausby, an investigator with the Conecuh County District Attorney's Office, testified regarding Benson's written memo containing Ruffin's statement and whether this document was in fact disclosed to the defense prior to trial.

After considering the testimony presented at the evidentiary hearing, the trial court found

regarding this issue:

> The Petitioner claims that the State violated her constitutional rights by failing to produce a Memo that was written by ABI investigator Simon Benson. The Petitioner claims that the Memo was exculpatory in nature.
>
> The Petitioner's claim that the State did not provide her with the Memo is false. The Petitioner's trial attorney Joseph E. Sawyer, Jr., testified he received the memo in question. Kenneth Ausby, Investigator for the District Attorney for the 35th Judicial Circuit, gave the memo to the defense before the trial. . . . There also exists a discovery receipt signed by a member of Mr. Sawyer's staff verifying the memo was produced to the Defendant before trial.
>
> Since the Petitioner has failed to allege any facts showing that the State failed to provide any evidence material to guilt or punishment, her claims are hereby DENIED.

Doc. 7-3 at 32.

Addressing this issue in Wiggins's Rule 32 appeal, the Alabama Court of Criminal

Appeals stated:

> In Claim (1), Wiggins alleged that the prosecution failed to turn over or otherwise disclose exculpatory evidence to the defense.
>
> The circuit court found that the document was in fact disclosed to Wiggins prior to trial. There was testimony adduced in the evidentiary hearing that the allegedly exculpatory document was given to an employee of trial counsel prior to the trial. The circuit court did not abuse his discretion in making this finding of fact and denying the claim.

Doc. 7-4 at 8.

Wiggins argues that the factual conclusions reached by the state courts on whether

the written memo containing Ruffin's statement was disclosed to the defense prior to trial

were patently unreasonable and that, contrary to the state courts' findings, the testimony

adduced at the evidentiary hearing on her Rule 32 petition indicated that the memo containing Ruffin's statement was not disclosed to the defense prior to trial. Doc. 2 at 20–24. Thus, she says the state court decision denying her relief on her *Brady* claim was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2).

Notwithstanding Wiggins's contention, this court finds that the state courts' characterization of the testimony presented at the Rule 32 evidentiary hearing is supported by the record, with the following qualification: while the trial court stated in its order denying Wiggins's Rule 32 petition that Wiggins's trial counsel, Sawyer, testified he received the memo in question from the State, Sawyer's testimony at the hearing reflected that he lacked an independent recollection of when he received the memo, i.e., whether he received the memo prior to trial as part of the State's discovery packet, or at some other time. Doc. 7-3 82–83 & 89. As recognized in the findings of both the trial court and the Alabama Court of Criminal Appeals, Kenneth Ausby, an investigator with the Conecuh County District Attorney's Office whose duties include providing State discovery to the defense in criminal trials, testified that he provided the State's discovery packet to the defense prior to Wiggins's trial. Doc. 7-3 at 119-20. One item listed on the receipt for the discovery packet that Ausby provided to the defense in Wiggins's case was the memo in question containing Ruffin's statement. Doc. 7-3 at 119–20; *see also* Doc. 7-3 at 39. Ausby also indicated that he was certain the memo was furnished with the discovery he provided to the defense. Doc. 7-3 at 122. He stated that when he turned the discovery packet over to the defense, "it had to be in the presence of Mr. Sawyer." Doc. 7-3 at 121.

According to Ausby, "[w]hether [Sawyer] signed it or whether his assistant or whatever signed, I don't know for sure.  But it had to be in his presence."  Doc. 7-3 at 121; *see also* Doc. 7-3 at 123.  The receipt for the discovery packet was signed by "Jonathan Sawyer," although Sawyer testified that the signature on the receipt was not in his handwriting.  *See* Doc. 7-3 at 39 & 86–88.  Sawyer stated that he usually picks up discovery materials from the State, but that he is "not above above sending somebody if . . . the circumstances warrant it."  Doc. 7-3 at 108.

In reviewing a state court's adjudication of a habeas claim, this court must presume the state court's factual determinations were correct.  28 U.S.C. 2254(e)(1).  A petitioner may rebut this presumption of correctness by clear and convincing evidence.  *Id*.  Credibility findings made by state courts are entitled to the presumption of correctness.  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), cert. denied, 520 U.S. 1257 (1997), overruled on other grounds by *In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004), judgment vacated by *Bell v. Abdur'Rahman*, 545 U.S. 1151 (2005); *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989).

In light of Ausby's testimony that, prior to trial, he provided the defense with the discovery packet, including the memo containing Ruffin's statement, this court finds that the factual determinations underlying the state courts' conclusions there was no *Brady* violation in Wiggins's case were not patently unreasonable.  Wiggins does not offer clear and convincing evidence that these state courts' factual determinations were incorrect.  28 U.S.C. 2254(e)(1).  That Wiggins's trial counsel Sawyer could not recall when he received the memo with Ruffin's statement does not negate Ausby's testimony that he provided the

memo to either Sawyer or Sawyer's assistant, in Sawyer's presence, before trial. Witness credibility and the resolution of any conflicting testimony at the evidentiary were matters for the trial court to resolve.

Where the State has not suppressed exculpatory evidence but instead has provided it to the defense, there is no *Brady v*iolation. The state courts found that the defense was provided with the allegedly exculpatory evidence in Wiggins's case.[6] Because the state court decision denying Wiggins relief on her *Brady* claim did not involve an unreasonable determination of the facts in light of the evidence presented, Wiggins is not entitled to federal habeas relief on this claim.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED without an evidentiary hearing and this case be DISMISSED with prejudice.

It is further

ORDERED that on or before **February 25, 2019**, the petitioner may file objections to the Recommendation. The petitioner must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered.

---

[6] Because Wiggins's *Brady* claim fails on the state court's determination that the evidence in question was provided to the defense, this court expresses no opinion on whether the evidence was indeed exculpatory and material, i.e, whether, assuming the evidence had been suppressed, a reasonable probability exists that the outcome of the proceeding would have been different had the evidence instead been disclosed to the defense. *See Spivey v. Head*, 207 F.3d 1263, 1283 (11th Cir. 2000).

Failure to file a written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of factual and legal issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE this 11th day of February, 2019.


   /s/  Stephen M. Doyle
STEPHEN M. DOYLE
UNITED STATES MAGISTRATE JUDGE